# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DEONTE SNOWDEN,

        Petitioner,    :    Case No. 3:20-cv-463

  - vs -                           District Judge Walter H. Rice
                                     Magistrate Judge Michael R. Merz

ED SHELDON, WARDEN,
  Allen Correctional Institution,

                                     :
        Respondent.

## REPORT AND RECOMMENDATIONS

      This is a habeas corpus case brought *pro se* under 28 U.S.C. § 2254 by Petitioner Deonte Snowden who challenges his convictions in the Montgomery County Common Pleas Court for murder and bribery (Petition, ECF No. 1).

      Under Rule 4 of the Rules Governing § 2254 Cases, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. Under the Court's random assignment system, this case was assigned to District Judge Walter H. Rice upon filing. All the habeas corpus cases filed at the Dayton location of court are referred to the undersigned under General Order Day 13-01.

      After conviction and sentencing, Snowden appealed to the Ohio Second District Court of Appeals which stated the background facts of the offenses of conviction as follows:

1

[*P2] Shortly after 11:00 p.m. on the night of June 6, 2016, Theodora Watson and her three grandsons, "D.O." (16 years old at the time), "D.E." (13), and "D.S." (10), were getting into her car outside her home in order to drive to a restaurant. Watson and D.E. testified that, just as they were about to leave, the victim, William Sarver, walked up to the driver's side of the vehicle and began a conversation with Watson. Watson testified that Sarver had lived in her neighborhood for several years, and the two were well acquainted. In fact, Sarver, whose nickname in the neighborhood was "Carl Lewis," would routinely shovel the snow at Watson's residence and go to the store for her.

[*P3] Watson testified that when Sarver learned that Warner was going to buy food, he handed her a $20 bill to pay for dinner. While she was speaking to Sarver, defendant-appellant Snowden walked up her driveway talking on a cell phone. Snowden was Watson's husband's nephew, and she had known him for his entire life. Snowden's nickname around the neighborhood was "DeeDot." D.E. also testified that he observed Snowden walking up the driveway toward the vehicle after Sarver had already approached the vehicle and begun speaking with Watson. Unlike Watson and D.E., D.S. testified that he observed Snowden walk up to Watson's vehicle before Sarver arrived. Nevertheless, Watson, D.E., and D.S. all testified that, after a short time, Snowden and Sarver got into an argument while they were standing near Watson's vehicle.

[*P4] Watson testified that Snowden initially slapped Sarver in the face with an open hand, knocking Sarver backwards. Sarver then slapped Snowden in the same manner. Watson, D.S., and D.E. testified that Snowden then pulled a handgun from the waistband of his pants and fired a single shot, striking Sarver in the abdomen. Watson and D.S. testified that, because it was dark, they never saw the handgun with which Snowden shot Sarver. D.E. testified, however, that from his vantage point inside the vehicle, he was able to see the handgun in Snowden's hand as Snowden shot Sarver.

[*P5] Watson, D.S., and D.E. testified that there were no other individuals standing close to Watson's vehicle when Snowden shot Sarver. Specifically, Watson, D.S., and D.E. each testified that Derrick Watson, Theodora's adult son and the boys' father, was not present when Snowden shot Sarver. In fact, they each testified that Derrick did not appear at the scene of the shooting until after the paramedics and police had arrived. Watson testified that there were some people standing in the street talking, but when the shot was fired, they all ran away. Watson, D.S., and D.E. all testified that after shooting Sarver, Snowden ran to a black sedan and drove away. D.S.

>and D.E. testified that the vehicle was a black Chevrolet Impala. All three witnesses had observed Snowden in the same vehicle in the past.
>
>[*P6] Watson, D.S., and D.E. immediately got out and attempted to help Sarver, who had fallen over into the open rear driver's-side door of Watson's vehicle. Watson called 911 using her cordless home phone, which she had taken with her when they initially left the house for food. We note that the record establishes that, while on the phone with the 911 operator, Watson stated that she was unable to identify the perpetrator. At trial, Watson testified that she told the operator that she could not provide the name of the perpetrator because she was scared and nervous immediately after the shooting occurred. Watson testified that she had no doubt that Snowden shot Sarver. When the paramedics arrived at the scene, Sarver was put in an ambulance and transported to Miami Valley Hospital, where he was later pronounced dead as a result of the gunshot wound.

*State v. Snowden*, 2019-Ohio-3006 (Ohio App. 2nd Dist. Jul. 26, 2019).

Snowden fled to Maricopa, Arizona, where he was located by cell phone pinging in October, 2016, arrested, and extradited to Ohio for trial. Snowden was tried for and convicted of murder, felonious assault, firearms violations and specifications, and bribery of a witness. After merger of some offenses and specifications under Ohio Revised Code § 2941.25, he was sentenced to an aggregate term of imprisonment of twenty-one years to life. *Id.* at ¶ 1.

Snowden pleads three ground for habeas corpus relief.

>**Ground One:** Petitioner was denied his guaranteed right to a fair trial when law enforcement lacked sufficient evidence to substantiate the good faith exception to the exclusionary rule and reasonable and objective exigent circumstances to conduct a warrantless search in violation of the Fourth and Fourteenth Amendments to the United States constitution and suppression was denied and conviction allowed to stand.
>
>**Ground Two:** Petitioner was denied the constitutional protections of the Fourth Amendment and the remedy thereof.

3

>**Ground Three:** Petitioner was denied the fundamental fairness of trial and effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

(Petition, ECF No. 1-1, PageID 19-21).

# Analysis

**Grounds One and Two: Violations of the Fourth Amendment**

In his First and Second Grounds for Relief, Snowden claims the Ohio courts failed to uphold his rights under the Fourth Amendment when they failed to suppress certain evidence obtained by police and used to prosecute the case.

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state court mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

>The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing

> a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

The decision of the Second District Court of Appeals shows that Snowden had a full and fair opportunity to litigate his Fourth Amendment claims, including his claim about the applicability of *Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2018), to his case. The fact that he was unsuccessful does not make his opportunity unfair. Because he had an opportunity to litigate his first two grounds for relief in the Ohio courts, this Court is barred from reaching the merits of those claims.

**Ground Three: Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Snowden claims he received ineffective assistance of trial counsel when his attorney did not press his Fourth Amendment claim to suppress cell site pinging information related to his location in Arizona.

Snowden presented this claim to the Second District in his direct appeal as the third subclaim of his Seventh Assignment of Error and the Second District decided it as follows:

> [*P97]  Snowden's seventh assignment of error is as follows:
>
>> THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
>
> [*P98]  In his seventh assignment, Snowden argues that he received ineffective assistance when his trial counsel: 1) failed to "explore" a

5

letter that was allegedly sent to the trial court by Watson's grandson, D.O.; 2) failed to call Derrick Watson and D.O. to testify at trial; 3) withdrew his objection to admission of the cell phone ping placing Snowden in Arizona; 4) failed to seek exclusion of "any reference to a cell phone being shut off deliberately" by Snowden.

> We review the alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by SUPREME COURT OF OHIO in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 605 N.E.2d 70 (1992).

*State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

[*P99] A defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *State v. Conley*, 2d Dist. Montgomery No. 26359, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 56, citing *Strickland*. A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. State v. Smith, 17 Ohio St.3d 98, 17 Ohio B. 219, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

6

> \* \* \* [Omitted paragraphs discuss other subclaims.]
>
> [\*P102] Snowden also contends that his trial counsel was ineffective for withdrawing his objection to the cell phone pings which placed Snowden in Arizona and led to his capture and eventual extradition to Ohio. At the hearing on the motion to suppress, defense counsel stated that he was unable to establish that the cell phone used to locate Snowden actually belonged to Snowden. Furthermore, defense counsel asserted that he would be unable to establish that Snowden had standing to assert a violation of his constitutional rights. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.' \* \* \* A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. \* \* \* And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, \* \* \* it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Rakas v. Illinois*, 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Ostensibly, without standing, it would have been arguably futile to maintain an objection to the constitutionality of the cell phone pings used to locate Snowden in Arizona. Accordingly, defense counsel's decision to withdraw his objection to the cell phone pings placing Snowden in Arizona did not amount to ineffective assistance of counsel. Assuming arguendo that a possessory interest alone was sufficient, any deficiency by counsel did not create such prejudice as to have affected the outcome of the trial.
>
> \* \* \*
>
> [\*P105] Snowden's seventh assignment of error is overruled.

*Snowden*, 2019-Ohio-3006.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-

7

94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Here the Second District applied the correct Supreme Court standard from *Strickland v. Washington,* 466 U.S. 668 (1984), as adopted by the Supreme Court of Ohio in *Bradley*.  Its application of *Strickland* is reasonable:  trial counsel represented he could not prove that the cellphone being pinged in Arizona belonged to Snowden and therefore Snowden lacked standing to raise a Fourth Amendment claim.  An attorney does not perform deficiently when he or she fails to raise an argument which is unavailing.  Snowden asserts in his Petition that a possessory interest in the phone would have given him standing, but he does not point to any evidence in the state court record of what possessory interest he may have had.  Additional evidence on that point cannot be introduced in habeas.  *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Because the Second District's decision of Snowden's ineffective assistance of trial counsel claim is not an objectively unreasonable application of Strickland, it is entitled to deference under 28 U.S.C. § 2254(d)(1).  Snowden's Third Ground for Relief should therefore be dismissed on the merits.

**Conclusion**

Having reviewed the Petition under Rule 4 of the Rules Governing § 2254 Cases, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal

8

would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 18, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.